**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF WEST VIRGINIA
Wheeling**

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

**v.**                                           **CRIMINAL NO. 5:14-CR-07-01
(Judge Bailey)**

**BRUCE S. MERRITT,**

    **Defendant.**

## ORDER ADOPTING REPORT AND RECOMMENDATION DENYING DEFENDANT'S MOTION TO SUPPRESS

Pending before this Court is the Report and Recommendation Concerning Defendant's Motion to Suppress [Doc. 18] issued by Magistrate Judge James E. Seibert on March 26, 2014. This Court, having reviewed Defendant's Motion to Suppress Evidence [Doc. 11], the United States' Response to Defendant's Motion to Suppress Evidence [Doc. 12], the Report and Recommendation [Doc. 18], Defendant's Objection to the Report and Recommendation that the Motion to Suppress Evidence Be Denied [Doc. 19], the transcript of the evidentiary hearing before Magistrate Judge Seibert, and the exhibits introduced at the hearing [Doc. 15], does adopt the Report and Recommendation for the following reasons:

The motion to suppress emanates from an interaction between the defendant and agents of the Alcohol, Tobacco and Firearms ("ATF") on September 22, 2013.

In 2013, defendant, a truck driver, was transporting firearms and other merchandise from the Cabela's Distribution Center in Triadelphia, West Virginia to a Cabela's retail store

1

in Dundee, Michigan. In the late summer of 2013, Alcohol, Tobacco, and Firearm ("ATF") agents began investigating the theft of firearms from shipments traveling from West Virginia to Michigan. A total of ten firearms were missing from these interstate shipments, and defendant became a suspect in this investigation. ATF agents set up surveillance in an attempt to catch defendant stealing items from the trucks, but were unable to catch him in the act.

On September 21, 2013, Cabela's asset protection team placed a hidden trail camera in the trailer defendant would be transporting to Michigan that day. When the trailer was dropped off in Dundee, Michigan, on September 22, 2013, the trail camera was gone, which led the asset protection team to believe that defendant was aware that he was under surveillance. As a result, a member of the asset protection team contacted ATF Special Agent Kozik to inform her of the same.

Consequently, ATF Agents Kozik, Haddix, and Perry traveled to defendant's house in Steubenville, Ohio, late in the evening of September 22, 2013, in an attempt to interview him. At approximately 9:00 p.m., the agents arrived at defendant's residence. Agents Kozik and Perry walked onto the front porch, while Agent Haddix remained in the driveway. The front storm door was open, but the screen door was shut. Kozik knocked on the screen door, and defendant came to the door and stepped out onto the porch. Defendant's wife was also in the house, as were her two small children, who were asleep in a bedroom. The agents entered defendant's residence and sat down in the living room. Defendant confessed to stealing the firearms, as well as numerous other items. He also described in detail how he gained entry into the trailers without breaking their seals. Defendant offered to take the agents into a back bedroom to retrieve two of the stolen firearms. As defendant

walked the agents to the bedroom, he pointed out other stolen items. The agents collected the stolen items in the living room in order to inventory them.

Agents Perry and Kozik asked defendant if they could search the cab of his truck, which was located outside, and defendant signed a consent to search form. Agent Perry and defendant went outside while Kozik and Haddix remained inside and interviewed defendant's wife. More stolen items were seized from the cab of defendant's truck. While outside, Perry shined his flashlight in defendant's parked Jeep and saw items that appeared to be Cabela's merchandise. Perry asked defendant if the items were also stolen and defendant said that they were stolen. Defendant entered the Jeep and gave the items to Perry. Defendant also advised that there may be stolen items in a shed behind his house. Defendant entered the shed and retrieved more stolen items.

Defendant also informed the agents that he sold some of the stolen firearms to his nephew. He agreed to escort the agents to his nephew's house to retrieve the firearms. The agents drove defendant to his nephew's house, but they were unable to recover the firearms. The agents drove defendant back home and gathered up the stolen merchandise. Before leaving, the agents asked defendant to try and locate the remaining firearms.

On October 2, 2013, Agents Kozik and Haddix returned to defendant's residence to follow-up on the status of the remaining missing firearms. When the agents arrived, defendant and his wife were unloading groceries. Kozik and Haddix helped them carry the groceries into the house. Thereafter, the agents interviewed defendant outside in the driveway. Halfway through the interview, defendant requested that they go inside because of "nosey neighbors." Once inside, defendant retrieved another stolen firearm and gave

3

it to Kozik. Defendant also told the agents that he was still attempting to recover the remaining firearms.

## Discussion

It is clear that the agents went to the Merritt home to conduct a "knock and talk." In the United States Court of Appeals for the Fourth Circuit, a "knock and talk," wherein law enforcement officers approach the entrance of a person's home in order to ask questions of occupants, is not a situation which requires a warrant or probable cause to be valid. See ***United States v. Taylor***, 90 F.3d 903, 909 (4th Cir. 1996) (finding that approaching the front door of the defendant's home and knocking was permissible as the defendant's "front entrance was as open to the law enforcement officers as to any delivery person, guest, or other member of the public"). In ***Davis v. United States***, 327 F.2d 301 (9th Cir. 1964), an opinion cited with approval by the Fourth Circuit in ***Taylor***, the Ninth Circuit held that when police officers have reasonable suspicion which would make it reasonable for them to desire to question a person regarding their suspicions, no "right of privacy" is invaded by officers or anyone else walking up to that person's home "with the honest intent of asking questions of the occupant thereof." *Id.* at 303.

***Covey v. United States***, 2013 WL 312475 (N.D. W.Va. 2013) (Stamp, J).

While there is a conflict in the testimony from defendant's wife that the agents simply barged into the trailer without consent, the Magistrate Judge resolved that conflict in favor of the agents. This Court agrees. It appears logical to this Court that if the agents had

4

simply barged into the home in a confrontational manner that they would act to secure the premises. They certainly would not have allowed the defendant's wife to remain in the home unimpeded such that she could conceal or destroy evidence. Rather they sat down in the living room to discuss the case. It is clear that the defendant consented to the entry of the trailer.

In Defendant's Objection to the Report and Recommendation that the Motion to Suppress Evidence Be Denied [Doc. 19], the defendant argues that inasmuch as Agent Kozik's report of the incident makes no mention of the defendant's consent, she (and the other agents) are lying about what transpired that evening. This Court does not agree. The agent's report is a report of a consensual "knock and talk." In her mind, this may have not even constituted a search and seizure, since they did not look for items, but rather the defendant walked through the trailer and pointed out items to be returned to Cabela's.

It is true that the agents secured a written consent form for the search of a cab of the truck, but in that case the agents asked if they could search the cab. With respect to the shed and the Jeep, the agents did not enter either. Rather the defendant looked in and handed the items to the agents who remained outside.

For the reasons stated above, this Court **ADOPTS** the Report and Recommendation of the Magistrate Judge [Doc. 18]. Defendant's Motion to Suppress Evidence [Doc. 11] is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to the defendants and all counsel of record.

**DATED**: April 25, 2014.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE